O

# United States District Court
# Central District of California

| | |
|---|---|
| SCREEN ACTORS GUILD–AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS,<br><br>                    Petitioner,<br><br>          v.<br><br>GOLDADE PRODUCTIONS INC.,<br><br>                    Respondent. | Case No. 2:14-cv-04843-ODW(MANx)<br><br>**ORDER GRANTING IN PART MOTION FOR ORDER CONFIRMING ARBITRATION AWARD [1]** |

## I.   INTRODUCTION

Petitioner Screen Actors Guild–American Federation of Television and Radio Artists ("SAG–AFTRA") entered into various agreements with Respondent Goldade Productions Inc. arising out of Goldade's desire to produce a film with SAG–AFTRA members.   After Goldade distributed the film in a broader release area in contravention of a letter agreement between the parties, SAG–AFTRA submitted the dispute to an arbitrator for decision as provided for in the applicable collective-bargaining agreement.   The arbitrator found for the union and awarded various damages.  SAG–AFTRA now seeks confirmation of that award.  The Court finds that the parties agreed to arbitrate this type of dispute and therefore **CONFIRMS** the arbitration award.[1]  (ECF No. 1.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

SAG–AFTRA is a union that represents nearly 165,000 media artists who work in various media formats.  (Espinosa Decl. ¶ 3.)  SAG–AFTRA is the successor-in-interest to the Screen Actors Guild, Inc.  (*Id.* ¶¶ 1, 3.)

On July 25, 2001, Goldade executed a Screen Actors Guild Theatrical Adherence Letter.  (*Id.* ¶ 4, Ex. A.)  In this Letter, Goldade agreed to be bound by the Screen Actors Guild Codified Basic Agreement of 1995 for Independent Producers and the 1998 Memorandum Agreement (collectively, "CBA").  (*Id.* ¶ 4, Ex. B, D (relevant portions of the Basic Agreement of 1995).)   In August 2001, Goldade executed a Screen Actors Guild Independent Producers' Limited Exhibition Letter Agreement and a Security Agreement.  (*Id.* ¶ 4, Exs. B, C.)

During the CBA's term, Goldade produced a motion picture titled "Sex and the Teenage Mind," which is also known as "Virgil" or "Virgil Gets Laid."  (*Id.* ¶ 5.) Goldade used SAG–AFTRA actors or other performers covered by the agreements to produce the film.  (*Id.* ¶ 7.)

Goldade eventually released the film in additional markets in violation of paragraph 4 of the Limited Exhibition Letter Agreement.  (*Id.* ¶ 8.)  This expanded release triggered Goldade's obligation to pay the performers salary upgrades as enumerated in the Letter Agreement.  (*Id.* ¶ 9, Ex. B at ¶ 4.)  Section 34 of the CBA also required Goldade to pay additional pension and health contributions.  (*Id.* ¶ 10, Ex. D.)

Goldade did not pay the additional required amounts.  (*Id.* ¶ 11.)   This additional failure triggered late-payment liquidated damages under section 31.B of the CBA.  (*Id.* ¶ 12, Ex. D.)

On January 17, 2007, SAG–AFTRA served Goldade with a Statement of Claim and Demand for Arbitration for the unpaid amounts per section 9 of the CBA.  (*Id.* ¶ 13, Ex. E.)   SAG–AFTRA and Goldade selected Sara Adler to serve as the / / /

arbitrator.  (*Id.* ¶ 15.)  After Goldade requested and received two continuances of the arbitration, SAG–AFTRA objected to a third continuance.  (*Id.* ¶ 16, Ex. F.)

On June 1, 2010, the arbitration was held.  Adler offered Goldade an opportunity to appear telephonically, but it refused the offer.  (*Id.* ¶ 17.)  On June 25, 2010, Adler issued an arbitration award in SAG–AFTRA's favor and against Goldade. (*Id.*, Ex. G.)  Specifically, Adler awarded $113,118.20, which consisted of the following amounts:

- $22,756.42 in salary upgrades
- $3,140.42 in pension and health contributions
- $3,491.36 in payroll taxes and fees
- $83,800.00 in late-payment liquidated damages

(*Id.* Ex. G.)

Goldade has failed to comply with the arbitration award.  (*Id.* ¶ 20.)  Goldade informed SAG–AFTRA that it is unable to make any payments to fulfill the award. (*Id.* ¶ 21.)  As a result, SAG–AFTRA filed this Petition on June 23, 2014.  (ECF No. 1.)  Despite being served with the Petition, Goldade has not opposed the Motion or otherwise responded.  The Motion is now before the Court for decision.

## III.   JURISDICTION

This Court has original jurisdiction over "actions and proceedings by or against labor organizations" that have their principal office in this district or have duly authorized officers or agents engaged in representing or acting for employee–members in this district.  29 U.S.C. § 185(c).  SAG–AFTRA has its principal place of business in Los Angeles, California, which is located in the Central District of California.  The Court therefore has original jurisdiction over this confirmation petition.

## IV.   LEGAL STANDARD

When the parties to a collective-bargaining agreement have agreed to arbitrate their dispute, the arbitrator has the sole authority to interpret the agreement. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960).  This is because

1  the parties have bargained for the arbitrator's interpretation—not that of a court.
2  *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).
3  The arbitrator may draw her interpretation from many sources but must stay true to the
4  agreement's interpretation.  *Id.* at 597.  An arbitrator's award is legitimate so long as
5  "it draws its essence from the collective bargaining agreement."  *Id.*

6        The Court's role in confirming a labor arbitration award is extremely limited.
7  *Am. Mfg. Co.*, 363 U.S. at 568–69.  The Court may only ascertain "whether the party
8  seeking arbitration is making a claim which on its face is governed by the contract."
9  *Id.* at 569; *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582
10 (1960).  The merits of the arbitrator's decision are irrelevant unless "the arbitrator's
11 words manifest an infidelity to this obligation."  *Enter. Wheel & Car Corp.*, 363 U.S.
12 at 597; *see also Am. Mfg. Co.*, 363 U.S. at 568.

## V.    DISCUSSION

14       The Court finds that SAG–AFTRA and Goldade agreed to arbitrate any
15 disputes arising from the CBA and the Limited Exhibition Letter Agreement.  The
16 Court accordingly confirms the arbitration award.

**A.    Confirmation of arbitration award**

18       While the arbitrator made several findings and awarded various types of
19 damages, this Court's sole job in determining whether to confirm the award is to
20 ascertain whether SAG–AFTRA and Goldade agreed to arbitrate this type of dispute.
21 *Warrior & Gulf Nav.*, 363 U.S. at 582.

22       Section 9 of the CBA provides, in relevant part, that "[a]ll disputes between the
23 Union and a Producer as to the interpretation of this collective bargaining agreement
24 shall be arbitrable."  (Espinosa Decl. Ex. D, at 49.)  Goldade explicitly agreed to be
25 bound by the CBA via the Theatrical Adherence Letter.  (*Id.* Ex. A ("It is agreed that
26 this letter is part of the [CBA], and by executing this letter, the undersigned Producer
27 and Screen Actors Guild . . . shall be deemed to have executed the [CBA].").)
28 / / /

1    The dispute between SAG–AFTRA and Goldade arose over Goldade
2 distributing its film outside the limited release area previously agreed to by the parties
3 in the Independent Producers' Limited Exhibition Letter Agreement.  (*See id.* Ex. B.)
4 While this Letter Agreement does not include its own arbitration clause, section 3 of
5 the Agreement provides that "all the terms of [the CBA] apply as described above [in
6 the Letter Agreement] except as hereby modified."  (*Id.*)  This means that the Limited
7 Exhibition Letter Agreement operated as a modification of the CBA's terms—or, in
8 other words, the parties incorporated the Letter Agreement into the CBA.  Since
9 Goldade agreed to arbitrate disputes involving interpretation of the CBA, it follows
10 that it agreed to arbitrate disputes concerning the incorporated Letter Agreement.

11    The Court accordingly finds that the parties agreed to submit this type of
12 dispute to arbitration, thereby requiring the Court to confirm the arbitration award.

13 **B.    Additional late-payment liquidated damages**

14    SAG–AFTRA also contends that it is "entitled to additional late payment
15 liquidated damages . . . through the date of this motion pursuant to section 31 of the
16 CBA for Respondent's continuing failure to pay outstanding amounts due."  (Mot. 8–
17 9.)  SAG–AFTRA requests $2,400.00 in attorneys' fees, which is calculated based on
18 eight hours of work at $300 per hour.  The union indicates that these late-payment
19 liquidated damages continue to accrue at $2.50 per day since the date of the arbitration
20 award, which was June 25, 2010.   In total, they seek an additional $75,000 in
21 liquidated damages.

22    SAG–AFTRA cites no authority for the Court's ability to award additional
23 amounts upon confirming the arbitration award.  Indeed, the idea of "confirming" an
24 award belies any notion that the Court can alter the award.  SAG–AFTRA would be
25 entitled to additional liquidated damages if the arbitrator included such an ongoing-
26 damages finding in her award.  But she did not.  Rather, the arbitrator awarded a sum
27 certain of $83,800.00 in late-payment liquidated damages and was silent on the issue
28 of whether the damages continued to accrue.  (Espinosa Decl. Ex. G.)  It would run

counter to the Supreme Court's line of cases interpreting LMRA § 301 to award additional amounts upon confirming an arbitration award, as the "courts . . . have no business weighing the merits of the grievance." *Am. Mfg.*, 363 U.S. at 568.  Rather, it "is the arbitrator's construction which was bargained for." *Enter. Wheel & Car Corp.*, 363 U.S. at 599.

The Court therefore declines to award additional liquidated or other damages and **DENIES** SAG–AFTRA's Motion on this ground.

## C.   Attorneys' fees

Under the "American rule," a prevailing party is not entitled to attorneys' fees unless provided for by contract or statute. *Int'l Union of Petrol. & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).  But "a court may assess attorneys' fees 'when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975).  The Ninth Circuit has interpreted "bad faith" in the labor-arbitration-award context to include "an unjustified refusal to abide by an arbitrator's award."  *Id.*

The Court declines to award SAG–AFTRA attorneys' fees it incurred in bringing this Petition, as the Court finds that Goldade has not engaged in bad-faith, vexatious, wanton, or oppressive conduct.  It appears that the sole reason for Goldade's failure to comply with the arbitration award is an inability to pay the rather substantial amount.  While the company's depressed financial situation certainly does not excuse its duty to fulfill the award, it also does not provide a basis for a punitive award of attorneys' fees.  After all, an attorneys'-fees award is the exception—not the rule.

## D.   Costs

SAG–AFTRA also requests reimbursement for the $400 filing fee it incurred in bringing this petition.  Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than

attorney's fees—should be allowed to the prevailing party."  Since SAG–AFTRA is the prevailing party in this case, the Court awards it the $400 filing fee.  *See* L.R. 54-3.1 (allowing reimbursement for filing fees).

## VI.    CONCLUSION

For the reasons discussed above, the Court **CONFIRMS** the arbitration award in this action in the amount of $113,188.20 and **AWARDS** $400.00 in costs.  (ECF No. 1.)  But the Court declines to award additional liquidated damages or attorneys' fees.  A judgment will issue.

**IT IS SO ORDERED.**


July 18, 2014


_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**